UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| JETS, LLC, a New Mexico limited liability company, | § § § | |
| Plaintiff, | § § | NO. 1:18-cv-00785-KRS-JHR |
| v. | § § | |
| ROCKY MOUNTAIN MEDIA SERVICES, INC., a New Mexico corporation, | § § § | |
| Defendant. | § | |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Defendant Rocky Mountain Media Services, Inc., by and through its attorneys of record, Sutin, Thayer & Browne, a Professional Corporation (Christina Muscarella Gooch and Charles J. Piechota), and pursuant to Fed. R. Civ. P. 12(b)(6), hereby moves the Court to dismiss, with prejudice, Plaintiff JETS, LLC's federal trademark infringement (Count I), state trademark infringement (Count II), and state unfair practices (Count III) claims set forth in the Plaintiff's Complaint for Damages for Trademark Infringement and Violation of the Unfair Practices Act (the "Complaint") for failure to state a claim upon which relief can be granted. Pursuant to D.N.M.LR-Civ. 7.1(a), Plaintiff was contacted regarding its position on this motion but no response was received. Therefore, Defendant assumes the motion is opposed.

## I.   INTRODUCTION

This case arises from a dispute between JETS, LLC ("Plaintiff") and Rocky Mountain Media Services, Inc. ("Defendant"). On July 6, 2018, Plaintiff filed a Complaint against Defendant in the State of New Mexico, Bernalillo County, Second Judicial District Court, styled *JETS, LLC v. Rocky Mountain Media Services, Inc.*, Case No. D-202-CV-2018-05087. Defendants removed the state court action contemporaneously with the filing of this motion to dismiss.

Plaintiff asserts claims under the Lanham Act, the New Mexico Trademark Act, and the New Mexico Unfair Practices Act (the "UPA"). (Complaint [Doc. 1-2], ¶¶ 9-24.)  Because they lack factual support, are not sufficiently pled, and fail to state claims, Plaintiff's lawsuit should be dismissed with prejudice.

## II.    ARGUMENT

### A.  Standard of Review

To survive a motion to dismiss, a complaint must contain sufficient facts that, if assumed as true, state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010) (same).  This Court has recognized:

> The sufficiency of a complaint is a question of law, and when considering a Rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.

*Garcia v. Purdy*, No. 13-CV-0234 MCA/KBM, Memorandum Opinion and Order, 9 (D.N.M. Mar. 11, 2014) (Armijo, J.) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  And, while a complaint "need not set forth detailed factual allegations, … a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action' is insufficient."  *Id.* at 10 (quoting *Iqbal*, 556 U.S. at 678).  This Court must disregard conclusory statements and look only to whether the remaining factual allegations plausibly—not just speculatively—suggest the defendant is liable.  *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).  To determine plausibility, the Court looks to the scope of the allegations and whether they encompass a "wide swath" of conduct, much of it innocent:

> '[P]lausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line

from conceivable to plausible.'  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

### B.  Plaintiff's Federal Trademark Infringement Claim Fails.

#### i.  "ABQ Comfort Shoes" is not protectable because the trademark is merely descriptive and has not acquired secondary meaning.

Plaintiff's Lanham Act claim (Count I) fails to state a claim because Plaintiff must allege facts sufficient to show that the term "ABQ Comfort Shoes," when used in connection with a retail shoe business in Albuquerque, New Mexico, is protectable as a trademark. Plaintiff failed to make this showing.  Specifically, to state a claim under the Lanham Act for an unregistered mark—as is the case here—the plaintiff must demonstrate that: (1) "[the] identifying mark ... is inherently distinctive or ... has acquired distinctiveness through secondary meaning," (2) the mark is nonfunctional, and (3) the competitor's alleged violation of the plaintiff's rights in its mark is likely to cause consumer confusion.  *Forney Indus., Inc. v. Daco of Missouri, Inc.*, 835 F.3d 1238, 1244 (10th Cir. 2016) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992)).  Generic marks are not protected as trademarks, and a descriptive mark can receive trademark protection "only when it has acquired a secondary meaning by becoming *distinctive* of the [owner's] goods in commerce." *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1152 (10th Cir. 2013) (emphasis added). Here, Plaintiff fails to meet the first element, as the alleged mark is comprised entirely of descriptive and generic terms merely describing what the Plaintiff sells and where the Plaintiff sells them.  Plaintiff has not alleged that the mark is inherently distinctive nor that it has acquired any secondary meaning.

"In order to be registered, a mark must be capable of distinguishing the applicant's goods from those of others." *Two Pesos*, 505 U.S. at 768. Courts classify marks in the following categories, in order of increasing distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4)

arbitrary; or (5) fanciful. *Id.* Suggestive, arbitrary and fanciful marks, because "their intrinsic nature serves to identify a particular source of a product," are deemed inherently distinctive and are entitled to protection from infringement. *Id.* Generic marks, on the other hand, are not registrable as trademarks. *Id.* A descriptive mark describes the qualities or characteristics of a good or service, and may be registered only if it has acquired secondary meaning, i.e., it "has become distinctive of the applicant's goods in commerce." *Park'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194, 105 S. Ct. 658, 661 (1985).

A geographic term—such as "ABQ", a ubiquitous abbreviation for the City of Albuquerque—that describes the origin, location, or source of the product or service is considered "descriptive" and therefore is not protectable unless there is a demonstration of secondary meaning. *Navajo Nation v. Urban Outfitters, Inc.*, 935 F. Supp. 2d 1147, 1159 (D.N.M. 2013). A "geographically descriptive term" is any noun or adjective which designates geographic location and would tend to be regarded by buyers as descriptive of the geographic location of origin of the goods or services. *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 513 (6th Cir. 2007). In *MacPhail v. Stevens*, a publisher sought damages and an injunction restraining use of the trade name "Denver Magazine." 41 Colo. App. 99, 586 P.2d 1339 (1978). The court held that "Denver" is simply a geographic designation, and "Magazine" is a generic or descriptive term, and neither singularly nor in combination are these words entitled to trademark protection without a showing that a secondary meaning has attached to them. *Id.*, 41 Colo. App. at 101, 586 P.2d at 1341 (emphasis added).

Just as "Denver" is merely a geographic designation, "ABQ" is nothing more than a geographically descriptive term indicating the location of Plaintiff's retail shoe stores in Albuquerque. Plaintiff has not alleged that its mark possesses secondary meaning, therefore it is

not protectable under trademark law. *See Kutztown Penn. German Festival, Inc. v. Thomas*, 50 U.S.P.Q.2d (BNA) 1221 (E.D. Pa. 1999) ("Kutztown" is a geographic designation and incapable of being exclusively appropriated); *see also generally Kerodin v. ServiceMagic, Inc.*, 106 U.S.P.Q.2d 1425, 2013 WL 951754 (D. Md. 2013) (where plaintiffs failed to allege that they had exclusive ownership of geographic domain names—including, among others, "PotomacHeating.com," "RockvilleHeating.com," and "BethesdaAirConditioning.com"—or that these names were valid and protectable marks, the court granted defendants' motion to dismiss).

Similarly, "[a] mark that is merely descriptive of the characteristics, qualities, use or functions of the goods cannot be registered." *Educ. Dev. Corp. v. Econ. Co.*, 562 F.2d 26, 28 (10th Cir.1977). In the context of a dispute over the use of the trademark "Savmotor," a gasoline additive for automobiles, the Tenth Circuit reasoned that:

> The word 'save' means to protect— to preserve or guard from injury. The word, here, clearly means to save the motor or protect the motor of automotive engines by improving the quality of the motor oil. Of course, as applied to the products here involved, 'motor' means an automotive engine. It seems perfectly clear to us that the word 'Savmotor' is descriptive of the qualities and the functions of the products and was not entitled to registration under the Lanham Act.

*Bardahl Oil Co. v. Atomic Oil Co. of Okl.*, 351 F.2d 148, 150 (10th Cir. 1965) (internal citation omitted). The Tenth Circuit Court also concluded that the trademark "SinuCleanse" was merely descriptive, and thus was a weak mark—requiring secondary meaning if it were to be protectable as a trademark. *Water Pik*, 726 F.3d at 1153. In reaching its holding, the court reasoned that the mark "clearly convey[ed] the sinus-cleansing function of Med–Systems' products." *Id.* In this matter, "Comfort" within the mark "ABQ Comfort Shoes" merely describes the characteristics and qualities of the products offered for sale at the store—i.e. comfortable shoes—and is therefore unable to garner trademark protection without evidence of distinctiveness or secondary meaning.

Generic marks are also not protectable. *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 101 F.3d 645, 654 (10th Cir. 1996). A word is generic if it is the common descriptive name of the product at issue and the public perceives the term as referring to a type of goods which (at least in theory) might be supplied by more than one source. *Two Pesos*, 505 U.S. at 768; *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 112-113 (1938); *see also Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79-80 (7th Cir. 1977) ("light-beer" held generic). "To allow a producer of goods to usurp a generic term as a protectable trademark would prevent competitors from describing their own goods adequately." *Mil-Mar Shoe Co. v. Shonac Corp.*, 75 F.3d 1153, 1157 (7th Cir. 1996) (internal citation omitted). Just as the term "Light Beer" is generic for a type of beer, "Shoes" is simply a generic descriptor for a particular type of footwear intended to protect and comfort human feet.

Furthermore, "[s]ignificant use of a term by competitors in the industry has traditionally been recognized, along with dictionary evidence, as indicating genericness." *Mil-Mar Shoe*, 75 F.3d at 1159 (internal citations omitted). In *Mil-Mar Shoe*, evidence was produced proving that hundreds of retail shoe stores use some form of either "Shoe Warehouse" or "Warehouse Shoes" in their names. *Id.* at 1155. The court noted that even though none of these stores were directly competing with Mil–Mar's "Warehouse Shoes" stores in the Greater Milwaukee area, the breadth of the use nationally by other shoe retailers substantiated the ultimate conclusion that "Shoe Warehouse" and "Warehouse Shoes" are generic. *Id.* at 1159.

The dispute in *Powder River Oil Co. v. Powder River Petroleum Corp.*, 830 P.2d 403 (Wyo. 1992), was similar to the present one. The Powder River Oil Company challenged the use of the name Powder River Petroleum Corporation. *Id.* at 405. Both parties were in similar localities and performed similar businesses. *Id.* at 406. The Wyoming Supreme Court ruled that

both names were combinations of geographic, descriptive and generic terms, and as a result of that combination concluded that "[t]he trade name Powder River Oil Company must be classified as 'weak,' meaning that proof of a secondary meaning in addition to proof of a likelihood of confusion is required to establish infringement." *Id.* at 408 (*citing FS Serv., Inc. v. Custom Farm Serv., Inc.*, 471 F.2d 671 (7th Cir. 1972). Just like the plaintiff in *Powder River Oil*, Plaintiff here is attempting to create a trade name out of a weak name that simply combines geographically descriptive ("ABQ"), descriptive ("Comfort") and generic ("Shoes") terms. *See LHO Chicago River, L.L.C. v. Rosemoor Suites, LLC*, 2017 WL 467687 (N.D. Ill. 2017), appeal dismissed, 2017 WL 3613324 (7th Cir. 2017) (since plaintiff had failed to establish that its putatively weak mark "Hotel Chicago" was possessed of secondary meaning, the court denied its application for preliminary relief).

If the tradename is weak, in that it only contains descriptive and generic terms—as is the case here—proof of the name having acquired a "secondary meaning" is necessary to gain protection from infringement. *See Water Pik*, 726 F.3d at 1152 ("Generic marks are not protected as trademarks, and a descriptive mark can receive trademark protection only when it has acquired a secondary meaning…"). To acquire secondary meaning, a merely descriptive mark must have been used "so long and so exclusively by one producer with reference to his goods or articles that, in the trade and to that branch of the purchasing public, the mark has come to mean that the article is his product." *Id.*, 726 F.3d at 1154. No single factor is determinative when considering whether a mark has gained a secondary meaning, but courts ordinarily consider such elements as the length and exclusivity of use, the nature and extent of sales, the underlying advertising and promotional expenditures contributing to such sales, the size and/or prominence of an enterprise, the existence

of instances of actual confusion, and other indicia of the recognition of the product in the market place, or the lack of it.  *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir. 2004).

The evidentiary burden necessary to establish a secondary meaning, particularly for a trademark containing a geographically descriptive term such as "ABQ," is substantial.  *Boston Beer Co. P'ship v. Slesar Bros. Brewing Co.*, 9 F.3d 175, 181 (1st Cir. 1993).  As the First Circuit explained in the context of the Boston Beer Company seeking trademark protection, "not only must [plaintiff] prove that, when read or heard by consumers in connection with beer, "Boston" no longer means that the beer was brewed in Boston or by a Boston-based brewer, but that the consuming public recognizes that the word "Boston" identifies [plaintiff] as the source of the beer." *Id.*, 9 F.3d at 181-82.  "[W]ith respect to the mark "Boston Beer,"… [plaintiff] must prove that a substantial portion of the consuming public associates those words *specifically* with [plaintiff]'s business." *Id.*, 9 F.3d at 182 (emphasis in original).

Plaintiff has not alleged any facts to demonstrate its claimed mark has attained a secondary meaning, or even alleged secondary meaning at all.  (*See generally* Complaint [Doc. 1-2].)  This alone is fatal to Plaintiff's claim.  *See Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 598 (E.D.N.Y. 2017) (court granted motion to dismiss where soap producer failed to allege that its claimed trade dress in periodic table soap had acquired secondary meaning). Moreover, even if Plaintiff had plead such factual allegations, "ABQ Comfort Shoes"—used on one sign at one retail location for less than four years (Complaint [Doc. 1-2], ¶ 4)—has not attained a 'secondary meaning' sufficient to warrant federal trademark protection.  By comparison, no secondary meaning was found for Kellogg's "shredded wheat," even though Kellogg used it exclusively for over thirty years and spent over 17 million dollars in advertising. *See generally Kellogg*, 305 U.S. 111.  Together, "ABQ Comfort Shoes," is merely a string of descriptive and generic terms that

have not acquired the secondary meaning required to warrant trademark protection. *See Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590, 595 (6th Cir. 1989) (geographically descriptive term lacks secondary meaning if it still primarily denotes a geographic area as opposed to a single source); *J.M. Huber Corp. v. Lowery Wellheads, Inc.*, 778 F.2d 1467, 1470 (10th Cir. 1985) ("To acquire secondary meaning, a descriptive mark must have been used so long and so exclusively by one producer with reference to his goods or articles that, in the trade and to that branch of the purchasing public, the mark has come to mean that the article is his product.").

### ii. "ABQ Comfort Shoes" is not famous.

Even if Plaintiff could prove its mark is protectable under federal trademark law without secondary meaning—it cannot—Plaintiff's claim for trademark dilution under the Lanham Act premised upon acts of blurring and tarnishment also fails to state a claim because the mark is not famous. (Complaint [Doc. 1-2], ¶¶ 9-13.) Dilution is "a cause of action invented and reserved for a select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge on their value." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999). The Lanham Act provides that "the owner of a famous mark ... shall be entitled to an injunction against another person who ... commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment." 15 U.S.C. § 1125(c).

Plaintiff's claim for dilution under Count I also fails because a threshold prerequisite to a claim for dilution is that the mark must be famous. *See Aegis Software, Inc. v. 22nd District Agric. Assoc.*, 2017 WL 2465034 (S.D. Cal. 2017) (since plaintiff failed to plausibly allege that its putative mark was inherently distinctive and otherwise famous, the court granted a motion to dismiss its dilution claim); *see also Kische USA LLC v. Simsek*, 121 U.S.P.Q.2d 1255, 2016 WL

7212534 (W.D. Wash. 2016) (since plaintiff failed to sufficiently allege that its marks were famous or "widely recognized by the general consuming public of the United States," the court provisionally dismissed its dilution claim).  A mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner.   15 U.S.C. §1125(c)(2)(A).   "By definition, all 'trademarks' are 'distinctive'—very few are 'famous.'"   4 McCarthy on Trademarks and Unfair Competition § 24:104 (4th ed.).  To be "famous" in the context of a trademark dilution claim, "[t]he mark must have a degree of distinctiveness and strength beyond that needed to serve as a trademark; it must be 'truly prominent and renowned." *HBP, Inc. v. Am. Marine Holdings, Inc.*, 290 F.Supp.2d 1320, 1338 (M.D.Fla.2003) (citation omitted).  In other words, "fame for dilution requires widespread recognition by the general public; it is a mark that has become a 'household name.'"   *Urban Outfitters*, 935 F.Supp.2d at 1167.

Plaintiff fails to allege that "ABQ Comfort Shoes" is a famous mark for purposes of its federal claims under Count I—which is a threshold requirement for a dilution claim under the Lanham Act. (Complaint [Doc. 1-2], ¶¶ 9-13.)  This, alone, is grounds for dismissal.  *See Faegin v. LivingSocial, Inc.*, 2015 WL 1198654 (S.D. Cal. 2015) (in the face of plaintiff's failure to allege that his mark was famous, the court granted defendants' motion to dismiss dilution claim).  Even assuming Count I included this requisite allegation, Plaintiff would still not be able to plead sufficient facts to support the legal conclusion that the term "ABQ Comfort Shoes" is widely recognized by the general consuming public of the United States as a designation of source of goods.  And, even if Plaintiff's allegation under its state trademark claim that it is a famous mark (Complaint [Doc. 1-2], ¶ 15) is taken as meaning the mark is famous at least in Albuquerque, by using the phrase "general consuming public" as the benchmark, the Lanham Act eliminates this

type of niche fame.  *Coach Services, Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1372 (Fed. Cir. 2012).  Instead, "fame" demands an exceptionally rigorous showing of proof.  *Id.* at 1373.  In *Coach Services*, the court found that the COACH brand lacked fame despite evidence of use since 1961, $3.5 billion in sales, expenditures of $30-60 million in advertising, hundreds of unsolicited media articles, 16 federal registrations, and the existence of 400 retail stores across all 50 states. *Id.* at 1367, 1373-76.  In short, trademark dilution claims are restricted to "truly famous marks, such as Budweiser beer … and Barbie dolls."  *Dahon N. Am., Inc. v. Hon*, No. 2:11–CV–05835–ODW, 2012 WL 1413681, at *4-59 (C.D. Cal. Apr. 24, 2012) (holding on a motion to dismiss that, as matter of law, the pleading party's marks were not famous and should be dismissed with prejudice, stating "[a]s to the relatively obscure Original BIOLOGIC and ECOLOGIC marks, [plaintiff]'s assertion that these are famous marks is highly implausible").

The Complaint contains no reference to (1) the extent and geographic reach of any advertising or promotion, (2) the geographic extent of Plaintiff's sales, or (3) the extent of recognition of the "ABQ Comfort Shoes" mark—all of which are essential to state a claim of fame under the Lanham Act.  15 U.S.C. § 1125(c)(2)(A); *see also Urban Outfitters*, 935 F. Supp. 2d at 1167 (same); *Small Business Bodyguard, Inc. v. House of Moxie, Inc.*, 2014 WL 5585339 (S.D. N.Y. 2014) (since there was not "a single factual allegation in the complaint [that plaintiff's mark was] recognized by a broad swath of this country's general consuming public," the court dismissed plaintiff's dilution claim).

Dilution by "blurring" is an association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark.  15 U.S.C. §1125(c)(2)(B).  The Complaint fails to allege how Defendant's use of its mark in any way impairs the claimed distinctiveness of "ABQ Comfort Shoes."  (*See generally* Complaint [Doc. 1-2].)

Dilution by "tarnishment" is an association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.   15 U.S.C. §1125(c)(2)(C).  For tarnishment to exist there must be a "particularly unwholesome association" created by a defendant's use of the mark which goes beyond matters that might simply be considered in poor taste.  *Jordache Enterprises, Inc. v. Hogg Wyld*, 625 F. Supp. 48, 57 (D.N.M. 1985), affirmed, 828 F.2d 1482 (10th Cir. 1987).  The Complaint fails to allege how Defendant's use of its own mark in any way tarnishes the reputation of "ABQ Comfort Shoes."  (*See generally* Complaint [Doc. 1-2].)

In sum, Plaintiff's mark is not protectable under the Lanham Act.  Even if it was protectable, which it is not, an allegation of dilution requires that the infringed-upon mark be famous, and "ABQ Comfort Shoes" does not meet this threshold requirement.  Count I should be dismissed with prejudice.

### C.  Plaintiff's State Law Claims Fail.
#### i.  Plaintiff's state law claims are governed by New Mexico law.

A federal court exercising supplemental jurisdiction over state-law claims "applies the substantive law, including choice of law rules, of the forum state."  *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999); *see also U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1143 (10th Cir. 2009) ("A federal court applies the choice of law rules of the state in which the district court sits.").  In New Mexico, choice-of-law analysis is a two-step process.  *Mosley v. Titus*, 762 F.Supp.2d 1298, 1314 (D.N.M. 2010) (citing *Terrazas v. Garland & Loman, Inc.*, 2006-NMCA-111, ¶ 14, 140 N.M. 293, 142 P.3d 374).  "First, the Court must characterize the 'area of substantive law—e.g., torts, contracts, domestic relations—to which the law of the forum assigns a particular claim or issue.'"  *Mosley*, 762 F.Supp.2d at 1314.  The next step is to apply New Mexico's choice-of-law rule. *Id.*

Allegations of violations of New Mexico's Trademark Act and the UPA sound in tort.

*Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 708 F. Supp. 2d 1209, 1224 (D.N.M. 2010)

("New Mexico UPA should generally be treated like a tort claim for choice-of-law purposes [and]

[d]efendants' unfair competition claim is based on [inter alia] trademark infringement."). "In tort

actions, New Mexico courts follow the doctrine of lex loci delicti commissi and apply the law of

the place where the wrong took place." *Mosley*, 762 F.Supp.2d at 1314 (citing authority omitted).

The place of the wrong is the location of the last act necessary to complete the injury. *Id.* "Where

the elements of the underlying claim include harm, the place of the wrong is the place where the

harm occurred." *Id.* (citing *First Nat'l Bank v. Benson*, 1976-NMCA-072, ¶ 6, 89 N.M. 481, 553

P.2d 1288). Since Plaintiff's claims of trademark infringement and unfair practices occurred in

New Mexico, and the claimed harm resulting from that conduct allegedly occurred in New Mexico,

Counts II and III are governed by New Mexico law.

### ii. Plaintiff Cannot State a Claim for Violation of the New Mexico Trademark Act, NMSA 1978 § 57-3B-15

Plaintiff alleges a violation of the New Mexico Trademark Act, NMSA 1978, § 57-3B-15,

in Count II of the Complaint. [Doc. 1-2], ¶¶ 14-17.) A claim for violation of the New Mexico

Trademark Act arises when a plaintiff owns a mark that is famous in New Mexico and another's

use of a mark commences after the trademark owner's mark becomes famous and such use causes

dilution of the distinctive quality of the owner's mark. *Guidance Endodontics*, 708 F.Supp.2d at

1250. Notably, the New Mexico Trademark Act is to be interpreted with reference to federal law.

*Id.*, 708 F. Supp. 2d at 1254.

Plaintiff's claim of state trademark infringement fails because plaintiff does not allege a

single fact to support its conclusory allegation that "ABQ Comfort Shoes" is a famous mark in

New Mexico. (Complaint [Doc. 1-2], ¶ 15.) "Fame" of the mark in New Mexico may be

demonstrated by the duration or extent of advertising and publicity in New Mexico, the specific channels of trade for the goods with which the owner's mark is used, or the degree of recognition of the owners mark in the channels of trade in New Mexico. *See Guidance Endodontics*, 708 F.Supp.2d at 1253-1254 ("a link between the mark and the State seems essential to establish that the mark is famous for purposes of the New Mexico anti-dilution statute."). Just as the Complaint is deficient in its factual allegations supporting its allegation of federal trademark infringement (*see* Section B, *supra*), Count II also contains no reference to the extent and geographic reach of any advertising or promotion, the geographic extent of Plaintiff's sales, or the extent of recognition of the ABQ Comfort Shoes mark. (Complaint [Doc. 1-2], ¶¶ 14-17.) *See Guidance Endodontics*, 708 F.Supp.2d at 1254 ("the New Mexico [Trademark Act]… is to be interpreted with reference to federal law on the topic…"). Therefore, Count II should be dismissed with prejudice.

### iii.   Plaintiff Cannot State a Claim Under the UPA

In Count III, Plaintiff is improperly relying on the UPA to advance its own private interests. (Complaint [Doc. 1-2], ¶¶ 18-24.) Count III contains no factual allegations that Defendant violated the UPA, just conclusory statements and recitations of the elements of the claim. (*Id.*) Even if it had pled sufficiently, Plaintiff still has no standing to assert a UPA claim because Plaintiff is a seller of shoes, not a consumer. (*Id.*, ¶ 4.)

A UPA claim has three required elements: (1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person. *Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 5, 142 N.M. 437, 166 P.3d 1091. "The [UPA] provides standing only to buyers of goods and services." *Santa Fe Custom Shutters & Doors, Inc.*

*v. Home Depot USA, Inc.,* 2005-NMCA-051, ¶ 17, 137 N.M. 524, 113 P.3d 347; *see also Hicks v. Eller*, 2012-NMCA-061, ¶ 21, 280 P.3d 304 ("Consistent with its purpose as consumer protection legislation, the UPA gives standing only to buyers of goods and services.").

To prevail on its UPA claim, Plaintiff must show that it sought to acquire Defendant's goods and services and that Defendant knowingly made false or misleading statements to Plaintiff in connection with the sale of goods or services. *State ex rel. Peterson v. Aramark Corr. Servs., LLC*, 2014-NMCA-036, ¶ 40, 321 P.3d 128; *see also Friedlander v. Los Alamos Nat'l Bank*, 06cv399 WPJ/LCS, [Doc. 46], 14 (D.N.M. Feb. 2, 2007) (dismissing UPA claim where there were no allegations that plaintiff ever "sought goods, services or an extension of credit" from defendant).[1]

Plaintiff is a seller, not a consumer of goods or services. (*See generally* Complaint [Doc. 1-2].) Plaintiff does not allege that it purchased or sought to purchase any goods or services sold by Defendant, or that there is any consumer relationship between the two companies. (*Id*.) Rather, Plaintiff claims that it was harmed as a *seller* because Defendant's "ABQ Shoes" mark allegedly misled or deceived *other consumers* at Plaintiff's expense. (*Id*., ¶¶ 19-20.) In short, Plaintiff is not a consumer under the statute and has no standing to maintain a claim for a violation of the UPA. *Santa Fe Custom,* 2005-NMCA-051 at ¶ 17; *see also Hicks*, 2012-NMCA-061 at ¶ 21.

Even if the Court finds that the Plaintiff is a consumer that has standing to bring a UPA claim, Plaintiff's claim fails to meet generally recognized pleading requirements. The Complaint offers no facts or explanations of any unfair or deceptive behavior on the part of Defendant, just

---

[1] *See also Guidance Endodontics, LLC*, 708 F. Supp. 2d at 1254 (seller of endodontic equipment lacked standing to assert UPA counterclaim; "a UPA claim may only be based on unfair practices in connection with the sale of goods or services--thus that it must be brought by a purchaser, not a seller."); *Santa Fe Custom Shutters & Doors, Inc.*, 2005-NMCA-051 at ¶ 14 (plaintiff shutter manufacturer lacked standing to assert UPA claim because the UPA "contemplates a plaintiff who seeks or acquires goods or services and a defendant who provides goods or services" and thereby "gives standing only to buyers of goods or services.").

the mere recitation of the elements of the UPA.  (*See generally* Complaint [Doc. 1-2].)  This is insufficient to survive a motion to dismiss.  *Twombly*, 550 U.S. at 555.

Plaintiff's UPA claim should be dismissed.  Further, and in accord with NMSA 1978, § 57-12-10, the Court has discretion to award Defendant's attorney fees and costs should the Court determine that Plaintiff's UPA claim was groundless and frivolous.  *G.E.W. Mechanical Contr v. Johnston Co.*, 1993-NMCA-081, ¶ 25, 115 N.M. 727, 858 P.2d 103; *Buckingham v. Ryan*, 1998-NMCA-012, ¶ 24, 124 N.M. 498, 953 P.2d 33 (An award of attorneys' fees is warranted if the party complaining of an unfair trade practice brought a meritless claim).  Defendant knew or should have known that it lacked standing and any reasonable basis to bring a UPA claim.  Therefore, Defendant respectfully requests that it be awarded its fees and costs incurred related to briefing this motion.

### iv.   Preemption Precludes Plaintiff's UPA Claim.

Even if Plaintiff had standing to bring a UPA claim and had pled allegations sufficient to support a UPA claim, the claim is preempted by federal trademark infringement law.  This is because rights that are equivalent to any of the exclusive rights within the subject matter of trademarks are governed by the Lanham Act and fall under the exclusive jurisdiction of the federal courts. 28 U.S.C. § 1338.  Here, Plaintiff's UPA claim seeks damages for the same alleged conduct upon which it bases its trademark infringement claim.  (*Compare* Complaint [Doc. 1-2], at ¶¶ 18-24 *with* ¶¶ 9-13.)

To avoid preemption by federal trademark law, Plaintiff's claim must go beyond the rights protected by its alleged trademark. *Thompson v. Youart*, 1990-NMCA-012, ¶¶ 4-6, 109 N.M. 572, 787 P.2d 1255.  To be governed by state law (i.e. the UPA), Plaintiff's claims must have a fundamentally different element or elements than those elements protected by trademark law. *Fin. Info, Inc. v. Moody's Investors Serv.*, 808 F.2d 204 (2nd Cir. 1986).  Any right that Plaintiff may

have under the UPA to prevent infringement on its alleged mark is no different than any rights which are protected by federal trademark law.  Therefore, Plaintiff's UPA claim is preempted by federal trademark law and, as such, should be dismissed with prejudice.

### III.    CONCLUSION

Plaintiff's mark is not protectable under federal or state trademark law because it contains only geographic, generic, and descriptive terms and has not obtained a secondary meaning. Plaintiff has failed to allege, and much less meet the high standard required to prove that its mark is famous, a threshold requirement to warrant trademark protection against dilution.  Even if Plaintiff's UPA claim was not subject to preemption, Plaintiff lacks standing to bring a UPA claim and has failed to allege the requisite facts to sustain a UPA claim.  Therefore, Defendant respectfully requests that the Court grant its Motion in its entirety, and that the Court dismiss Plaintiff JETS, LLC's complaint with prejudice, award reasonable attorney fees and costs to Defendant because the UPA claim was groundless and frivolous (as stated in Section II(C)(iii), *supra*), and for other such relief that the Court deems just and proper.

Respectfully submitted,

SUTIN, THAYER & BROWNE
A Professional Corporation

By: */s/ Christina Muscarella Gooch*
    Christina Muscarella Gooch
    Charles J. Piechota
    P.O. Box 1945
    Albuquerque, NM  87103
    Telephone: (505) 883-2500
    Email: tmg@sutinfirm.com
          cjp@sutinfirm.com
    *Attorneys for Defendant Rocky*
    *Mountain Media Services, Inc.*

I HEREBY CERTIFY that on August 16, 2018, I filed and served the foregoing electronically through the CM/ECF system which caused a copy to be served to:

Benjamin F. Feuchter, Esq.
Hinkle Shanor LLP
7601 Jefferson NE, Suite 180
Albuquerque, NM 87109
Ph: (505) 858-8320
Fax: (505) 858-8321
bfeuchter@hinklelawfirm.com


*/s/ Christina Muscarella Gooch*
Christina Muscarella Gooch


4714755.docx